## Smith *v.* Great Atlantic & Pacific Tea Company, Inc., Appellant.

Argued March 1, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*Donald A. Lewis,* for appellant.

*Thomas J. Evans,* for appellee.

OPINION BY ERVIN, P. J., April 15, 1965:

In this trespass action for damages resulting from personal injuries to the plaintiff, the jury found for the plaintiff. The defendant's motion for judgment n.o.v. was refused and the defendant appealed from the judgment entered on the verdict.

It is the contention of the appellant that there was no evidence establishing negligence on its part and, further, that the plaintiff was guilty of contributory negligence as a matter of law.

We have reviewed the entire record and, viewing the facts in the light most favorable to the verdict winner, the reasonable facts and inferences are as follows:

The defendant was the operator of a self-service super-market in Bloomsburg. On March 27, 1961, between 11:50 a.m. and 12:30 p.m., the plaintiff and her husband were shopping in the defendant's store. They had shopped there many times previously. On the day and time in question the plaintiff walked down an aisle which had shelves of food on each side. Coffee was on one side and baby food on the other. The aisle was empty when the plaintiff started down and also when she stopped about halfway down to get coffee. As the

plaintiff turned to go to the other side of the aisle, she struck her left ankle on an empty, unattended metal freight cart, 8 inches high and 16 inches wide, with a handle 38 inches high, which at that time was immediately behind her. The cart was used by the employes of the store for carrying the merchandise to replenish the shelves. The plaintiff broke her left ankle and fell to the floor.

The defense witness, Harry E. Hower, a clerk, testified that he had been using the cart to fill the baby food shelves and he left it, partially loaded, lengthwise, in the center of the aisle, at about twelve o'clock, when he went to eat.

The plaintiff testified as follows on direct examination: "Q. Describe just what happened; did you trip over this cart or truck? A. It was right behind me, and the front part of it was so you would trip over it when you turned, the front part—not the whole cart, but the upper cart; and it was not there when I went up the aisle, and I did not see it. I turned to get the baby food which I knew was there because I had gotten it many times, and as I turned to get that, the cart was there and threw me down. Q. You say your left leg contacted? A. That is right. Q. You fell which way, forward? A. I got overbalanced sort of forward, and I went back on my back, and my leg went under the cart. It jammed into the wheel."

On cross-examination plaintiff testified as follows: "Q. What I am getting at is this, you said the truck was three feet wide and the aisle five feet wide, and I wonder how you pushed the cart down there if this was sitting in the middle of the aisle? A. If it had been in the aisle, I would have seen it and gone on ahead, but there was nothing in the aisle when I came up. . . . Q. And had you passed this truck at that time? A. I didn't see any truck there. Q. Then tell me what you did; you stepped to your left and struck it? A. I

was getting things from the right-hand side first, and when I turned left, there it was, the front part of it. . . . Q. Can you explain why you didn't see this truck sitting there? A. I have no idea, because when I went up there, it wasn't there. . . . Q. Then why did you say it wasn't there when you went through before? A. When I came up, it wasn't there. I didn't go through it before. Can't you understand; I went down this aisle; I crossed over, and the next one I went up, and it wasn't there when I started up. It wasn't too far up that aisle. . . . Q. At no time before you started down that aisle could you tell whether there was a truck there, could you? A. You would see it there at the time if it was there while you were going up it. . . . By The Witness: I don't know how to tell you any plainer either, because it was not there when I came up that aisle."

It is clear from the plaintiff's testimony that as she started down the aisle in which she fell, no cart or anything else was in that aisle. After shopping for coffee on one side of the aisle, she turned to go to the other side and as she did so, she fell over the freight cart. The jury could properly infer from the evidence that an employe of the defendant placed the freight cart behind the plaintiff while she was removing articles from the shelves on one side of the aisle.

This case is distinguishable from the cases of *Sloss v. Greenberger*, 396 Pa. 353, 152 A. 2d 910, and *Stenson v. Rechutti*, 416 Pa. 548, 207 A. 2d 760. In those cases the plaintiffs walked into wire baskets in supermarkets, which were in clear and plain view and right in front of the plaintiffs. Such are not the facts in the present case.

The court below properly left the question of contributory negligence to the jury. We cannot say, as a matter of law, that the plaintiff should have seen this unexpected obstacle as she turned. While it had a

handle on one end, the body of the freight cart was only eight inches off the floor.

The evidence on contributory negligence is not so clear and unmistakable that there is no room for fair and sensible men to differ in their conclusions: *Paull v. Meyers*, 200 Pa. Superior Ct. 74, 186 A. 2d 849.

Judgment affirmed.